Pence Mae SMITH, Appellant,

v.

Margaret M. HECKLER, Secretary of Health & Human Services, Appellee.

No. 83-2101.

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1984.

Decided July 16, 1984.

Debora L. Clovis, Third Year Law Student (Richard L. North, University of Maryland School of Law, Clinical Law Program, Baltimore, Md., on brief), for appellant.

Anne F. Sirota, Social Sec. Div., Washington, D.C. (J. Frederick Motz, U.S. Atty., Glenda G. Gordon, Asst. U.S. Atty., Randolph W. Gaines, Deputy Asst. Gen. Counsel for Litigation, A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, and HALL and SPROUSE, Circuit Judges.

K.K. HALL, Circuit Judge:

Pence Mae Smith appeals from an order of the district court, denying her request for attorney's fees under the Equal Access to Justice Act ("EAJA").[1] Smith prevailed below in the underlying action she brought against the Secretary of Health and Human Services (Secretary) to obtain social security benefits. We conclude that Smith is entitled to attorney's fees pursuant to the EAJA. Accordingly, we reverse and remand the case to the district court with directions to award appellant reasonable attorney's fees.

---

1. 28 U.S.C. § 2412(d)(1)(A).

## I.

On September 11, 1979, Smith applied for disability benefits under Social Security's Supplemental Security Income (SSI) program,[2] alleging that she was unable to work due to back problems, high blood pressure, and a history of abdominal surgery. At the time of her application Smith was fifty-one years of age. She had a seventh-grade education and was previously employed as a hotel/motel housekeeper and domestic.

A hearing on Smith's application was held before an Administrative Law Judge (ALJ) in June, 1980. At this hearing, claimant, represented by counsel, testified that her physical complaints included stomach and leg problems, a back tumor, incapacitating pain in her stomach, nerves, high blood pressure and gastritis. She stated that her sister cooked and cleaned for her because she was unable to do so. Smith further stated that she could sit and stand for half an hour at a time and lift up to five pounds. She said that during the day she watched television and lay in bed. Smith's sister corroborated claimant's testimony.

The record reveals that Smith's primary impairment was a recurring hiatal hernia. Claimant underwent two major operations to repair her hernia in 1979 and 1980. According to a report submitted by her treating physician, John S. Braxton, M.D., Smith was completely disabled by her impairments. The ALJ nevertheless concluded that Smith was not disabled. He found claimant's testimony of incapacitating pain not credible and held that, in light of the medical evidence, she had no severe impairment which would prevent her from engaging in substantial gainful activity.

Following the ALJ's decision of August 20, 1980, Smith submitted to the Social Security Administration's Appeals Council new evidence from Dr. Braxton, and from Garth A.S. Samuels, M.D., a thoracic surgeon. This evidence indicated that her hiatal hernia might have recurred, in which case further surgery would be inevitable. The ALJ's decision denying SSI benefits was, however, approved by the Appeals Council on September 23, 1980, and became the final decision of the Secretary.

Smith appealed the Secretary's decision *pro se* to district court. In a memorandum opinion and order entered June 17, 1981, the district judge remanded the case to the Secretary for reconsideration because the Appeals Council had "completely failed to evaluate the new medical evidence," and because "the new evidence strongly suggests the necessity for further surgical procedure (and perhaps the ultimate failure of any surgical procedures) to cure plaintiff's hiatal hernia."

On remand, a supplemental hearing was held in November, 1981. Smith, again represented by counsel, submitted additional evidence, which documented that her hernia had recurred, causing an esophageal stricture with reflux.[3] According to this evidence, in February, 1981, and again in August, 1981, Smith underwent two additional surgical procedures, known as esophagoscopy and dilatation, to correct the stricture or narrowing of her esophagus. Dr. Braxton, Smith's treating physician, reconfirmed his opinion that Smith was disabled from performing regular and customary employment. In a report dated November 3, 1981, Dr. Samuels, Smith's surgeon, stated that she would need continued "medical supervision indefinitely" to relieve her recurring symptoms of vomiting, gagging, and dysphagia.[4]

---

**2.** Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*

**3.** Smith's physical impairment has been variously described as a recurrent hiatal hernia with reflux esophagitis and a paraesophageal hiatal hernia. The latter condition is not a true hernia but represents part of the fundal wrap which was left in Smith's chest during the surgical repair of the hiatal hernia. Smith's condition has caused her to experience recurring digestive difficulties, including persistent gagging, vomiting, and swallowing difficulties (dysphagia), as well as discomfort and pain.

**4.** The record further revealed that in June, 1981, Smith had taken an overdose of medication in an attempt to commit suicide and was receiving ongoing psychiatric treatment for depression.

The additional evidence on remand also included a disability evaluation prepared by Thomas Pozefsky, M.D., who examined Smith at the request of the ALJ in August, 1981. Dr. Pozefsky confirmed Smith's diagnosis as "status post repair hiatal hernia with recurrent esophageal stricture," but noted that claimant was in no distress and that corrective surgical dilatation seemed to be effective. Dr. Pozefsky opined that Smith was capable of performing light work.

Relying in large part on Dr. Pozefsky's report, the ALJ issued his decision in December, 1981, concluding that Smith had not established a sufficiently severe impairment to disable her from performing her past relevant work as a hotel/motel housekeeper. Between the time of the November, 1981, hearing and February, 1982, Smith underwent two more surgical dilatations to alleviate her symptoms from the recurring hernia. Although aware of this information, the Appeals Council adopted the ALJ's recommended decision to deny benefits, labeling the evidence documenting Smith's third and fourth corrective surgeries "essentially cumulative."

Once again, Smith appealed from the Secretary's denial of benefits. The Secretary defended her decision as being supported by substantial evidence. The United States magistrate, to whom this matter was referred, and the district judge concluded otherwise.

Noting that Dr. Pozefsky's report "does not rule out further dilations on a recurring basis," the magistrate found that there is "no question that plaintiff's primary impairment meets the durational requirement of the Social Security Act," and concluded that Smith was unable to engage in her accustomed occupation. The magistrate also found that any further remand of this case was unwarranted, because the record established that Smith could engage in no more than sedentary work. Given her age, education, and previous work experience, she was, therefore, automatically entitled to disability benefits under the Secretary's medical-vocational guidelines or "grids." 20 C.F.R. Pt. 404, Supt.P., App. 2, Table No. 1, Rule 201.09.

The district judge accepted the magistrate's recommendation and ordered the Secretary to award benefits. He, nevertheless, denied Smith's post-judgment motion for attorney's fees under the EAJA on the ground that the Secretary's position in this litigation was substantially justified. From that order, Smith appeals.

## II.

On appeal, Smith argues that the administrative record in this case provides no substantial justification for the defense of the Secretary's decision to deny benefits and that she is consequently entitled to attorney's fees under the EAJA. We agree.

The EAJA, 28 U.S.C. § 2412(d)(1)(A) provides as follows:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The purpose of this legislation was to "'remove an obstacle to contesting unreasonable governmental action through litigation' posed by the expense involved in securing the vindication of a party's rights in the courts." *Dougherty v. Lehman*, 711 F.2d 555, 562 (3d Cir.1983), citing *Goldhaber v. Foley*, 698 F.2d 193, 195 (3d Cir. 1983). According to the statute's legislative history, "[t]he test of whether or not a government action is substantially justified is essentially one of reasonableness. In order to defeat an award, the government must show that its case had a reasonable basis both in law and fact. Absent such a showing, fees should be awarded unless

some other circumstances make an award unjust."[5]

In *Tyler Business Services, Inc. v. NLRB*, 695 F.2d 73, 75 (4th Cir.1982), we noted that "the legislative history teaches that in cases 'where a party has had to engage in lengthy administrative proceedings before final vindication of his or her rights in the courts, the government should have to make a strong showing to demonstrate that its action was reasonable.'" (Citations omitted). In *Guthrie v. Schweiker*, 718 F.2d 104 (4th Cir.1983), this Court held that the attorney's fees provisions of the EAJA apply to services rendered in court in social security cases.[6] *Guthrie* established the following guidelines to aid district courts in determining whether EAJA attorney's fees are appropriate in a given social security case:

> In the district court the government's position generally is established at the administrative level and judicial review is limited to consideration of the administrative record by cross motions for summary judgment. Therefore, the government's position in the district court normally would be substantially justified if, as is usual, the United States attorney does no more than rely on an arguably defensible administrative record. In such a situation, the EAJA would not require an award of attorney's fees. Moreover, entry of summary judgment for the claimant raises no presumption that the government's position was not substantially justified. *See Tyler Business Services, Inc. v. NLRB*, 695 F.2d 73, 75 (4th Cir.1982). *It is possible, however, for the administrative record to be so deficient that the government would not be substantially justified in*

relying on it. *See McDonald v. Schweiker*, 551 F.Supp. 327, 332–33 (N.D.Ind.1982).

*Id.* at 108 (emphasis added).

We can only conclude that, given the level of deficiency presented by the administrative record in this case, the district court erred in denying Smith's request for EAJA attorney's fees. Simply stated, under any standard of appellate review, the record does not provide substantial justification for the Secretary's decision to deny benefits, following the district court's 1981 remand order.[7] Our holding of course does not mean that the Secretary is automatically liable for attorney's fees every time she loses a case. If, however, an award of attorney's fees is deemed unjustified under the facts of this case, it is difficult to imagine any case where such an award could be found appropriate.

The only possible evidence supporting the Secretary's position was the report of a consultative physician, Dr. Pozefsky. This report stood in stark contrast to the evaluations and conclusions of Smith's treating physicians, as well as the clinical evidence, including x-rays, which confirmed the recurring nature of Smith's impairment. Furthermore, Dr. Pozefsky's report ignored the effect of further corrective surgeries—the very question which the district court ordered to be addressed on remand. At least by the time the Appeals Council denied benefits in June, 1982, the record conclusively demonstrated that Smith's four corrective surgical procedures were providing only temporary and intermittent relief. Given these facts, it was eminently unreasonable for the Secretary to continue to deny benefits to Smith on a record which, without Dr. Pozefsky's report, man-

---

5. H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 13 (1980), *reprinted* in U.S.Code Cong. & Ad.News 4953, 4992.

6. *Guthrie* involved a claim for social security disability benefits under Title II of the Social Security Act, while the instant case involves a claim for disability benefits under Title XVI of the Act's Supplemental Security Income program. We find the reasoning in *Guthrie* equally applicable in Title XVI cases.

7. We reach this conclusion without deciding the question of which appellate standard of review is appropriate in such cases. *See, e.g., Spencer v. NLRB*, 712 F.2d 539, 561–65 (D.C.Cir.1983). We find that under any of the possible review standards (*de novo*, abuse of discretion, or the clearly erroneous standard), the decision below denying EAJA attorney's fees must be reversed.

dated a finding of "disabled" under the Secretary's own medical-vocational guidelines. Finally, in this case, which required a heroic four-year struggle by plaintiff to win her benefits, including two administrative hearings, two appeals, and two court proceedings, we are unable to find any special circumstances which would make an award of EAJA attorney's fees in any way unjust.

### III.

Because the Secretary's actions in forcing Smith to relitigate her SSI claim lacked any credible legal or factual basis, we reverse the district court's order denying plaintiff's application for attorney's fees pursuant to the EAJA. We also remand this matter to the district court with directions to enter an order awarding Smith a reasonable amount of attorney's fees incurred as a result of this litigation.

REVERSED AND REMANDED.

HARRISON L. WINTER, Chief Judge, dissenting:

The majority concludes that even under the most deferential standard of appellate review, the district court's determination that the government's position in the proceedings before it had a reasonable basis in law and fact cannot be sustained. I believe that in reaching this conclusion, the majority misanalyzes the present record, and, accordingly, I dissent.[1]

There certainly is substantial evidence in the record that supports the determination made by the district court that the claimant is disabled. Among this evidence is the evaluation of her treating physicians, the claimant's history of recurrent hospitalization for treatment of hiatal hernia and related conditions, and clinical evidence documenting the recurrent nature of her impairment. That this is so certainly does not end the inquiry regarding an attorney's fee award, however. As we noted in *Tyler Business Services, Inc. v. N.L.R.B.*, 695 F.2d 73, 75 (4 Cir.1982), entry of summary judgment for the claimant raises no presumption that the government's position was not substantially justified.

I, unlike the majority, believed that there at least arguably is substantial evidence that would support the Secretary's finding that the claimant was not disabled. The Secretary's decision to deny benefits rested on a determination that Smith's impairment was not "severe" for purposes of 20 C.F.R. § 416.920(c) for periods meeting the durational requirement of twelve months imposed by Section 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A).

---

1. I do not here attempt to grapple with the question left unresolved by the majority opinion—the standard by which a court of appeals should review the district court's determination as to whether the position of the government in the district court proceedings was substantially justified. I note that if we were called upon to review the district judge's conclusions on questions of law relevant to determining whether to award attorney's fees or his conclusions as to whether certain legal positions advanced in the proceedings by the government were colorable or plausible, a stricter standard of appellate review might be appropriate. *See Spencer v. N.L.R.B.*, 712 F.2d 539, 561–565 (D.C.Cir.1983). The proceedings before the district court in the present case, however, did not involve a dispute between the parties as to governing legal standards; rather, they arose from competing evaluations on the part of the Secretary and the claimant of evidence presented to determine entitlement to benefits. The administrative law judge's denial of benefits was based primarily on the determination that claimant's impairment was not of sufficient severity to establish entitlement to benefits. The district court's decision to deny attorney's fees thus was essentially a determination that the government's position, that the state of the evidence could support a decision to deny benefits, had some substantial justification. Since the district court's decision is a determination of issues of fact, or at most of the probative force of evidence submitted by the parties in administrative proceedings, a deferential standard of appellate review is almost certainly appropriate in this case. *See also id.*, 712 F.2d at 563–565.

However, I need not reach the question of precisely what standard of review should be applied to the district court's decision to deny attorney's fees. Even were we to undertake *de novo* review of the matter, I would conclude that attorney's fees are inappropriate under the facts of this case. It follows that, whatever standard of review we might apply to the district court's decision, I would conclude that the district court acted correctly.

This, in turn, rested on an evaluation of the severity of Smith's symptoms and their susceptibility to correction by surgical procedures. The majority apparently believes that indications in the record that continuing medical supervision and quite probably additional surgical procedures would be necessary to control Smith's condition conclusively established the disabling effect of Smith's impairment. I cannot agree.

The issue in determining whether an impairment is indeed severe must be two-fold. First, the symptoms of the impairment when it occurs must be such as to prevent relevant occupational activities. This also means that the symptoms must occur with sufficient frequency as to interfere with relevant work activities. Second, it must be established that medical efforts to control the symptoms either must be ineffective or themselves of such a nature as to prevent relevant work.

The Secretary in the present case concluded that Smith's symptoms responded to medical treatment and could be adequately controlled thereby. It seems to me that there certainly is an arguable case to be made for this position. Though Smith had, by the time the Appeals Council reviewed the case the second time, four times undergone a surgical procedure known as esophagoscopy and dilatation, the record shows that the procedure could be rapidly performed, allowing claimant to be discharged within a few hours of when she entered hospital for treatment. The record shows that Smith's need for the procedure never exceeded a frequency of once every three months. This means that the need to repeat the procedure in order to control Smith's condition would not *ipso facto* prevent her from holding employment. It is a brief procedure and in Smith's case was not required with debilitating frequency. It thus need not have interfered unduly with an occupational schedule. The record in addition offers support for the conclusion that the procedure was effective in controlling Smith's condition; both Smith's treating physicians and the Secretary's consulting physician indicated that results of the esophagoscopy and dilatation seemed to be excellent, if not enduring.

Since the record offers far more than trivial support for the Secretary's determination, it follows that it also offers support for the district court's determination that the Secretary's position before him had substantial justification. I would affirm the district court's determination to deny attorney's fees.